# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1237

_____

| | |
|---|---|
| Fatoumata Jolloh Diallo, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of an |
| v. | * Order of the Board |
| | * of Immigration Appeals. |
| Michael B. Mukasey, United | * |
| States Attorney General,[1] | * |
| | * |
| Respondent. | * |

_____

Submitted: November 12, 2007
Filed: November 19, 2007

_____

Before RILEY, BOWMAN and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Fatoumata Jolloh Diallo (Diallo) petitions for review of an order of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). In support of her petition, Diallo argues the BIA erred in: (1) upholding the Immigration Judge's (IJ) adverse credibility determination and (2) upholding the IJ's

_____

[1]Michael B. Mukasey has been appointed to serve as Attorney General and is substituted as respondent pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

finding that changed country conditions precluded a determination Diallo would face persecution if removed to her native country of Sierra Leone. We dismiss Diallo's petition as it relates to her asylum claim, and deny the remainder of the petition.

## I.    BACKGROUND

After the Department of Homeland Security (DHS) commenced removal proceedings against Diallo, she conceded removability, and sought asylum, withholding of removal, and CAT relief. The IJ designated Sierra Leone as her country of removal. Diallo testified she was persecuted in Sierra Leone. Specifically, Diallo stated she and her family were active in a disfavored political party and, based upon this political involvement, her father and two brothers were killed in 1995, and her husband was killed in 1998. Diallo also claimed she was raped and beaten by the men who killed her husband, and she was later arrested and falsely charged with arson. Diallo further testified she fled to Guinea after her release from prison, and eventually came to the United States in early 2002.

The IJ considered Diallo's application and found her lacking in credibility. The IJ noted "[o]ne of the major issues in this case is [Diallo's] identity in addition to her citizenship and nationality." The IJ based this finding on numerous factors. First, a government investigation determined the birth certificate Diallo produced was a forgery. Second, Diallo also presented an identity card that the IJ stated appeared to have been altered to coincide with the information on the forged birth certificate. Third, the IJ found Diallo's testimony regarding her travels and arrival in the United States was "general, vague, and meager[.]" Finally, the IJ reviewed records from Greyhound Bus Line, upon which Diallo claimed to have traveled, and noted these records contradicted Diallo's accounts of her travel dates and whereabouts. Based upon these factors, the IJ not only made an adverse credibility finding, but also found Diallo had "failed to prove her time, place and manner of entry into the United States [and] . . . [a]ccordingly . . . failed to show she filed for asylum within one year of

her arrival into the United States." The IJ thus denied Diallo's asylum claim due to the untimeliness of the asylum application.

The IJ also denied Diallo's requests for withholding of removal and CAT relief, based upon the adverse credibility determination. Finally, the IJ found, even if Diallo had credibly established past persecution, circumstances had materially changed in Sierra Leone, and "the human rights situation has vastly improved since Sierra Leone's devastating civil war was officially declared over in January 2002." Accordingly, the IJ determined Diallo could not establish she would more likely than not face persecution or torture if returned to Sierra Leone, thus precluding withholding of removal or CAT relief. Diallo appealed this decision to the BIA, which affirmed the IJ's decision on all counts.

## II.    STANDARDS OF REVIEW

Where "[t]he BIA's decision is the final decision of [the] agency . . . it is the subject of our review." Salkeld v. Gonzales, 420 F.3d 804, 808 (8th Cir. 2005). "To the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Id. (citation omitted). When we review a BIA determination regarding eligibility for asylum, the BIA's findings are reviewed under a substantial evidence standard. See Zheng v. Gonzales, 415 F.3d 955, 959 (8th Cir. 2005). The BIA's findings regarding eligibility for withholding of removal or CAT relief are also reviewed for substantial evidence. See Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007). This is an "extremely deferential standard of review[.]" Salkeld, 420 F.3d at 809. Under the substantial evidence standard, the agency's findings of fact "must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it." Sultani v. Gonzales, 455 F.3d 878, 881 (8th Cir. 2006) (citation omitted) (emphasis added). "This court defers to an immigration judge's credibility finding where the finding is supported by a specific, cogent reason for disbelief." Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (citations and internal

quotation marks omitted). "[B]ecause the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight." Id. (citation omitted).

## III. DISCUSSION

### A. Asylum Review - Jurisdiction

Diallo was required to "demonstrate[] by clear and convincing evidence that the [asylum] application ha[d] been filed within 1 year after the date of [her] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). This court lacks jurisdiction to review the BIA's finding that Diallo's asylum application was not filed within one year of her arrival in the United States. See 8 U.S.C. § 1158(a)(3); see also Bejet Viali Al-Jojo v. Gonzales, 424 F.3d 823, 826-27 (8th Cir. 2005).

To the extent Diallo's argument could be characterized as a procedural due process claim, this court has left open the possibility that such claims could qualify as an exception to the jurisdictional bar in § 1158(a)(3). See Somakoko v. Gonzales, 399 F.3d 882, 883 (8th Cir. 2005). However, Diallo has not asserted a procedural due process claim. Additionally, for the reasons outlined in the following section, if characterized as a due process claim, Diallo's asylum arguments are still without merit. As in Somakoko, even if Diallo's claims sounded in due process, it would be unnecessary to decide "the troubling question whether relief from an untimeliness ruling may *ever* be granted on procedural due process grounds." Id.

We therefore dismiss for lack of jurisdiction Diallo's petition for review of the BIA's denial of her asylum petition.

### B. Credibility Determination

Diallo cites Kourski v. Ashcroft, 355 F.3d 1038 (7th Cir. 2004) for the proposition that a falsified document, standing alone, cannot support an IJ's adverse credibility finding where there is no reason to believe the alien knew the document

was false, and no other grounds upon which to base the adverse credibility finding. Although Kourski stands for this proposition, see id. at 1040, Diallo's reliance on the case is unavailing. With or without knowledge of the falsity of a counterfeit identification document, the applicant must still confront the basic burden of establishing her identity and nationality, which are legitimately in question. In Diallo's case, the IJ did not rely *solely* on the falsified certificate. Rather, the IJ noted Diallo produced an identity card that appeared to have been altered to coincide with the information on the forged birth certificate.[2] The IJ further found Diallo's testimony "general, vague, and meager[,]" and found records from Greyhound Bus Line, upon which Diallo claimed to have traveled, contradicted Diallo's accounts of her travel dates and whereabouts. Moreover, the record supports the IJ's determination that Diallo's testimony was vague. Diallo provided little explanation regarding these matters, or the disparity between her claimed travel dates and the bus line records. These evidentiary inadequacies also raise doubts regarding Diallo's date, place and manner of entry into the United States. These findings distinguish Diallo's case from Kourski, and provide substantial evidence supporting the adverse credibility determination. Although these aspects of her testimony do not necessarily compel an adverse credibility determination, we were not present to evaluate Diallo's demeanor

---

[2]Diallo claims, "Oddly, the [IJ] . . . discounted the identity card because the information therein matched the information found on Ms. Diallo's birth certificate." There is nothing odd about this determination. Because the identity card appeared altered, and matched the information on a forged birth certificate, it was not unreasonable for the IJ to conclude *both* documents were false.

and "great weight" must be given to the IJ's determination.[3]  We therefore uphold the adverse credibility determination.

### C.    Changed Country Conditions

Even if the credibility determination were in error, substantial evidence supports the BIA's conclusion that changed country conditions preclude a finding of future persecution or torture if Diallo is returned to Sierra Leone.  To qualify for withholding of removal, an alien "must show a *clear probability* [of persecution] in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion."  See Mouawad, 485 F.3d at 411 (citations and internal quotation marks omitted) (emphasis added).  To obtain CAT relief, an alien must show he or she is "more likely than not" to suffer torture if returned to the designated country of removal.  Id. at 413.  Although Diallo points to aspects of the country reports that indicate her life in Sierra Leone will likely be difficult, many aspects of the country reports support the BIA's determination the circumstances in Sierra Leone have significantly improved in the past few years.  We will not substitute our judgment for that of the BIA.  Rather, the BIA's determinations

[3]Diallo also contends the forged birth certificate only related to her birth, age and identity, and thus did not go to the heart of her asylum claim.  For support, she points to the Ninth Circuit's holding in Chen v. INS, 266 F.3d 1094, 1100 (9th Cir. 2001), vacated on other grounds by 537 U.S. 1016 (2002) , on remand to 326 F.3d 1316 (9th Cir. 2003).  Chen holds that documents relating only to issues such as identity and date of birth do not enhance a claim of persecution, and therefore discrepancies in such documents cannot form the basis for an adverse credibility determination.  Id.  We need not adopt or completely reject this proposition.  However, Diallo's proof of her identity and nationality are fundamental, and when called into question, Diallo must present adequate explanation or risk a lack of credibility finding.  Again, Diallo fails to recognize that the fake documents in her case comprised only part of the basis for the IJ's adverse credibility determination.  The false documents, combined with vague testimony and discrepancies in Diallo's travel records, undercut not only her identity and her nationality claim, but also the alleged date she entered the country, as well as her overall credibility.

"must be upheld unless the alien demonstrates that the evidence [s]he presented not only supports a contrary conclusion but *compels* it." <u>Sultani</u>, 455 F.3d at 881 (citation omitted) (emphasis added). The record does not compel a contrary conclusion.

## IV. CONCLUSION

The petition for review is dismissed for lack of jurisdiction as to the asylum claim and denied as to withholding of removal and CAT relief.

—————————————————————