# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3684

_____

Rezaul Karim; Zannatul Karim;　　　*
Neamulzannat Neela,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Petitioners,　　　　 *
　　　　　　　　　　　　　　　　　*　Petitions for Review from the
　　　v.　　　　　　　　　　　　　*　Board of Immigration Appeals.
　　　　　　　　　　　　　　　　　*
Eric H. Holder, Jr., Attorney General *
of the United States,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Respondent.　　　　　*

_____

Submitted:  November 17, 2009
Filed:  March 4, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Lead petitioner Rezaul Karim ("Karim"), along with his wife and daughter, are natives and citizens of Bangladesh.  They petition for review of an order of the Board

of Immigration Appeals ("BIA") denying asylum and withholding of removal.[1]  We deny the petition.[2]

# I.

Karim and his family entered the United States as visitors in September 1993 with permission to remain until March 26, 1994.  Karim applied for asylum in December 1993 based on allegations of persecution due to his membership in the Jatiya political party in Bangladesh.  Removal proceedings began more than twelve years later with the issuance of Notices to Appear dated January 4, 2006.  During a November 2006 immigration hearing, the petitioners conceded removability for overstaying their visas and added a claim under the Convention Against Torture ("CAT").  A hearing on the merits occurred on  March 6, 2007.

---

[1]The BIA opinion states that petitioners did not dispute the Immigration Judge's ("IJ") denial of relief under the Convention Against Torture ("CAT") or denial of voluntary departure.  The BIA also noted that the CAT claim was based on the same evidence as the unsuccessful asylum claim.

Petitioners make no argument regarding CAT relief in their opening brief, and we consider the claim waived.  Hasalla v. Ashcroft, 367 F.3d  799, 805 (8th Cir. 2004).  A discussion of voluntary departure is also absent from the opening brief, though some question about it arose in the petitioners' reply brief and at oral argument.  Even if we were to consider it,  as a practical matter, we have held that we lack jurisdiction  to review the denial of voluntary departure.  E.g., Tebit v. Holder, 321 F. App'x 525, 526 (8th Cir. 2009) (unpublished per curiam).

[2]Petitioners have motions pending before the BIA related to ineffective assistance of counsel at earlier stages of their proceedings.  We deny this petition without prejudice to those motions.

The record indicates Karim joined the Jatiya party in 1982, became a supervisory secretary in 1985, and ran into problems because of his political affiliation when a rival political group, the Bangladesh National Party ("BNP"), came to power. In May 1991, BNP militants threw rocks at Karim's home. In July 1991 BNP members assaulted him, and in December 1991, BNP members allegedly took him to their local office, beat him again, and detained him for half a day. Karim did not suffer significant injuries from the 1991 incidents. The most serious attack allegedly occurred in March 1992, when Karim stated he was again taken to a local BNP office and beaten so severely that he remained hospitalized for two months. He testified that he reported each incident to the police, who refused to help.

Karim also claimed that in May 1993, he learned that a BNP leader had filed a criminal complaint falsely accusing him of carrying a weapon illegally and that police had gone to his home to look for him. These incidents prompted his flight to the United States. According to Karim, he considered returning to Bangladesh in 1997, but his brother obtained and sent him the police report for the May 1993 incident. Karim submitted the police report to corroborate this aspect of his claim in January 2007, less than two months before the merits hearing.

The Department of Homeland Security ("DHS") sent the police report to the Immigration and Customs Enforcement Document Forensic Laboratory for testing. Forensic testing was not completed in time, so DHS asked the fraud section of the U.S. embassy in Dhaka to verify the authenticity of the report. The resultant Consular Investigation Report ("consular report") indicated that Karim's police report for the weapons charge was "a totally false case."

During the merits hearing, Karim's attorney moved to continue or adjourn because DHS had not submitted the consular report until about a week before. Counsel argued that proceedings should at least wait until forensic testing could be completed. The Immigration Judge ("IJ") denied the motion and admitted the consular report into evidence over Karim's objection. Karim attempted to rebut the

consular report by asserting that the investigator had perhaps failed to look in the right records or go to the right police station when creating it.

Karim testified that he feared returning to Bangladesh because of ongoing violent conflict between the political parties, which he had learned about from the news and from his brother who lived there. Background evidence in the record includes a 2005 State Department country condition report and a 2005 State Department profile of Bangladeshi asylum cases, both submitted by the government. The record also contains a 2006 report from an international NGO that the IJ had suggested the parties consider during the initial November 2006 hearing. The 2005 State Department country conditions report and the 2006 NGO report indicate that the Jatiya party had joined a BNP-led coalition government in 2001, suggesting that the BNP was unlikely to persecute members or low-level leaders of the Jatiya party, like Karim. Karim maintained that he belonged to a different Jatiya faction than the one aligned with the BNP; however, evidence indicated that Karim was a member of the faction that had joined the coalition government.

The IJ denied all forms of relief in an oral opinion. The IJ noted "the point of departure for this decision are country conditions"[3] and then turned to Karim's

---

[3]We note that Karim argued in his opening brief that the IJ erroneously inverted the burden of proof by finding changed country conditions at the outset and requiring Karim to refute them before considering his claim of persecution. Upon careful review of the IJ opinion, we disagree. Although the IJ made this remark at the beginning of the opinion's analysis section and failed to outline the burden-shifting analysis discussed in Part II, infra, the substance of the opinion allocated this initial burden properly.

The IJ then conducted a separate well-founded-fear analysis. It is here that the IJ considered country conditions in Bangladesh as relevant to Karim's case. In this regard, the IJ first stated:

Turning to the respondent's confession that he faces likely mistreatment

claims of past persecution. The IJ believed that Karim held a supervisory secretary position in the Jatiya party and had been beaten on a number of occasions. However, the IJ found Karim not credible as to the most severe beating in 1992 due to inconsistencies in his statements about the incident. The IJ determined the other, less severe beatings and threats did not rise to the level of persecution. Additionally, the IJ found Karim had submitted a false police report and stated that Karim had given "misleading testimony in that regard." Considering these problems, the IJ determined that Karim had failed to establish past persecution. The IJ also found that Karim lacked a well-founded fear of future persecution. Further, the IJ denied asylum as a matter of discretion based on the submission of the fraudulent police report. The IJ next found Karim had failed to meet the higher burdens of proof for withholding of removal and CAT relief. Finally, the IJ denied voluntary departure primarily based on Karim's submission of the fraudulent police report.

On appeal to the BIA, Karim argued that (1) he had established eligibility for asylum; (2) the IJ erred in admitting the potentially flawed consular report without

---

on return to Bangladesh, *I would say even apart from the fraudulent document, the case has no merit*. It is clear that the party of which the respondent was active in as an unpaid member, and it seems to me on a scale of activism at the very bottom, and that the conditions have substantially changed. This particular party, a small party, is now part of the governing coalition.

The IJ then went on note that Karim had little reason to believe the BNP militants would attack him upon his return, that he had been away from the country for more than thirteen years at that point, and the contact he had with the Bangladeshi government did not suggest it was interested in harming him. Summarizing the findings, the IJ reiterated that Karim had failed to establish past persecution and stated that: "I do not find that there is a well-founded fear of persecution here, that is, that there is an objective basis for the respondent's proclaimed fear of returning to Bangladesh."

allowing for a continuance; and (3) the IJ's conduct at the merits hearing lacked impartiality. The BIA dismissed the appeal. It noted at the outset that Karim had failed to challenge the IJ's adverse credibility finding and that the IJ's finding of no past persecution was based largely on the IJ's disbelief of Karim as to the 1992 beating. The BIA then went on to hold that the IJ had not abused its discretion in denying a continuance, had not erred in admitting the consular report, and had not demonstrated a lack of impartiality. Finally, the BIA held that the IJ's denial of asylum and withholding of removal based on changed country conditions was supported by the record. In doing so, the BIA cited the portions of the IJ's decision describing the evidence of changed country conditions and assumed that Karim could establish past persecution, thus shifting the burden to the government for rebuttal. The instant petition for review followed.

## II.

To qualify for asylum, Karim must establish that he is a "refugee" as defined in the Immigration and Nationality Act. 8 U.S.C. §§ 1158(b)(1)(A), 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a). In short, a refugee is someone who is unable or unwilling to return to his or her native country because of persecution or a well-founded fear of persecution on account of five enumerated grounds, including political opinion. 8 U.S.C. § 1101(a)(42)(A). Persecution is a "fluid concept" that includes the "threat of death, the threat or infliction of torture, and the threat or infliction of injury to one's person or one's liberty on account of a protected ground." Sholla v. Gonzales, 492 F.3d 946, 951 (8th Cir. 2007).

If Karim establishes past persecution, he is entitled to a presumption of a well-founded fear of persecution upon return to Bangladesh. 8 C.F.R. § 1208.13(b)(1). The burden then shifts to the government to rebut the presumption by showing fundamentally changed country conditions or the possibility of internal relocation. Id. §§ 1208.13(b)(1)(i)–(ii). "If an applicant attempts to establish a well-founded fear of future persecution without having shown past persecution, then the burden does not

shift and the applicant must show the fear is both subjectively genuine and objectively reasonable." Uli v. Mukasey, 533 F.3d 950, 955 (8th Cir. 2008) (quotation and citation omitted). "An alien may establish the subjective element with credible testimony that he or she genuinely fears persecution. " Francois v. INS, 283 F.3d 926, 930 (8th Cir. 2002). "Objectively, the alien must show credible, direct, and specific evidence that a reasonable person in the alien's position would fear persecution if returned to the alien's native country." Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005) (internal quotations and citations omitted).

Withholding of removal is a mandatory form of relief, unlike asylum which is discretionary. 8 U.S.C. §§ 1231(b)(3)(A), 1158(b)(1). To obtain withholding of removal, an alien must demonstrate a clear probability—i.e., that it is more likely than not—that he would suffer persecution on account of a protected ground. Ngure v. Ashcroft, 367 F.3d 975, 989 (8th Cir. 2004). The standard for withholding of removal is more rigorous than the well-founded-fear standard for asylum, so an alien who fails to prove eligibility for asylum cannot meet the burden for withholding of removal. Id.

"Where the BIA's decision is the final agency decision, it is the subject of our review." Diallo v. Mukasey, 508 F.3d 451, 453–54 (8th Cir. 2007) (quotations and citation omitted). However, to the extent that the BIA adopted the findings or the reasoning of the IJ, we review the IJ's decision as well. Id. at 454. We review a denial of asylum for abuse of discretion. Uli, 533 F.3d at 955. We review underlying factual findings for substantial evidence in the record, id., and the substantial-evidence standard is "extremely deferential." Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005). We will not overturn the agency's decision unless Karim demonstrates that the evidence "not only supports a contrary conclusion," Diallo, 508 F.3d at 454 (quotation omitted), but that it is so compelling "that no reasonable fact finder could fail to find the requisite fear of persecution." Cooke v. Mukasey, 538 F.3d 899, 904 (8th Cir. 2008). "We analyze questions of law *de novo*, according substantial deference to the agency's interpretations of the statutes and regulations it administers."

Gitimu v. Holder, 581 F.3d 769, 772 (8th Cir. 2009) (internal quotations and citation omitted).

### III.

Karim puts forth several arguments against the agency's denial of relief. His main contentions remain that the IJ violated his due process rights by admitting the consular report and should have granted a continuance instead. Karim argues that the admission of the consular report resulted in a damaging adverse credibility finding regarding the alleged illegal weapon case against him, which in turn led to the IJ's conclusion that Karim failed to establish past persecution and the IJ's denial of asylum as a matter of discretion. He also argues that the IJ's separate adverse credibility finding as to the 1992 beating is unsupported by substantial evidence. The Attorney General counters that we lack jurisdiction to consider the "dispositive" issue of adverse credibility because Karim failed to properly raise it before the BIA–as the BIA opinion itself points out.

Alternatively, the Attorney General asserts that the finding of changed country conditions is conclusive in this case. We agree. Even assuming that Karim was credible and could establish past persecution, we will not interfere with the decision "if the record provides sufficient support for . . . the factual finding that changed country conditions mean [Karim] do[es] not have a well-founded fear of future persecution." Gitimu, 581 F.3d at 773. We have held that "State Department country reports can support a factual finding of changed conditions to rebut a presumption of a well-founded fear of future persecution." Id.; see also Mambwe v. Holder, 572 F.3d 540, 548 (8th Cir. 2009); Diallo, 508 F.3d at 455 (in withholding of removal and CAT case, "[e]ven if the credibility determination were in error, substantial evidence [including country reports] supports the BIA's conclusion that changed country conditions preclude a finding of future persecution or torture" if petitioner returned); Reyes-Morales v. Gonzales, 435 F.3d 937, 942 (8th Cir. 2006) ("Our court has expressly held that a State Department country report may be used to rebut the

presumption that an asylum-seeker has a reasonable fear of persecution."). Here, the 2005 State Department country conditions report states that a BNP candidate became prime minister in 2001 in an election "deemed free and fair by international and domestic observers." Although this election took place in an environment of "sporadic violence and isolated irregularities," the Jatiya party became and remained a member of a coalition government led by the BNP. We acknowledge that the country report indicates ongoing politically motivated violence and notes NGO and press accounts of politically-motivated kidnappings, disappearances, and government harassment such as arbitrary and false arrests and detentions. However, the country report does not suggest that people in positions comparable to Karim's in the Jatiya party continue to be targeted for persecution, either by members or leaders of the BNP, by the other political parties, or by the government itself.

Other documentary evidence the agency relied on has much the same tenor. The 2006 NGO report confirms that the Jatiya party joined a BNP alliance and that the BNP recognized that it must maintain alliances, including with the Jatiya party, to retain power through subsequent elections. Moreover, this report suggests overall that tension and hostilities have centered in recent years around the BNP and the Awami League, the two largest mainstream parties, with a growing concern over potential violent clashes with Islamist political parties and militant groups. Neither party has asserted here that the Jatiya party is such a group.

Finally, our own review of the record reveals additional evidence that, while not explicitly discussed by the agency, tends to support its position. A 2005 State Department profile of Bangladeshi asylum claims observes that "[t]he violence that applicants relate as a result of their membership and work for a political party [including the Jatiya party] is real," and that student organizations of the various political groups, including the BNP and Jatiya parties, continue to clash violently in particular. Once again, however, the report does not suggest Karim or someone in his position would become a target. In fact, elsewhere this report states that "the Jatiy[a] Party . . . is no longer a major force in Bangladesh politics . . . ."

To be sure, the record paints politics in Bangladesh as a messy and often violent business. This alone does not compel a conclusion contrary to that of the BIA. "While a different factfinder may have reasonably found in the Petitioners' favor, that is not enough to require reversal . . . ." Gitimu, 581 F.3d at 774.

Where applicants fail to establish eligibility for asylum, "they necessarily cannot meet the more rigorous standard of proof for withholding of removal." Khrystotodorov v. Mukasey, 551 F.3d 775, 784 (8th Cir. 2008). Accordingly, we affirm the BIA order dismissing the appeal and deny the petition for review.

_____