# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2843

_____

| | |
|---|---|
| Samir Bracic, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of an |
| v. | * Order of the Board |
| | * of Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

_____

Submitted: May 12, 2009
Filed: April 29, 2010

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Petitioner Samir Bracic, a native of the former Yugoslavia and a citizen of Montenegro, petitions for review of an order of the Board of Immigration Appeals ("Board") denying his claims for asylum and withholding of removal. Mr. Bracic contends that the Board violated his Fifth Amendment right to due process by limiting the case on remand to entry of a ministerial order, but then citing lack of additional evidence as the basis for the Board's decision to dismiss his appeal. He further argues that the Board wrongfully upheld the Immigration Judge's determination that Mr. Bracic did not prove past persecution or a clear possibility and well-founded fear of

future persecution. Mr. Bracic petitions this court for review of the denial of his applications for asylum and withholding of removal, and we grant the petition.

I.

Mr. Bracic is a Muslim Albanian. After the breakup of the civil wars in Bosnia and Kosovo, Mr. Bracic testified that Serbian authorities began to issue general propaganda labeling Albanians as Muslim terrorists, which he attributes to the discrimination against Muslim Albanians. Mr. Bracic's high school expelled him for not studying "hard enough." During his high school years, police frequently stopped him on the street, asking him for identification and briefly detaining him.

Mr. Bracic joined two political parties, the Liberal Party in 1995 and the Albanian Union in 1999. As a member of the Albanian Union, he distributed pamphlets but did not hold an official position. The Albanian Union urged democracy for Montenegro with fair representation for Muslim Albanians, and it voiced opposition to the war in Kosovo because its members believed the government was killing innocent people and committing war crimes. Mr. Bracic attended Albanian Union meetings but then stopped for fear of being arrested or being sent to the front lines of the war. The government sent secret police to the meetings, who would follow members home and harass them.

The Serbian Army sent Mr. Bracic several draft notices. He responded to the first notice and reported for a physical examination, which he passed. He did not respond to any further notices. Mr. Bracic testified that the Serbian Government sent Muslim Albanians to the front lines of the war in Kosovo to fight other Muslim Albanians. They were essentially victims, as they were sent without sufficient ammunition. He believed that he would have been forced to commit war crimes as well. After the war ended, the government continued to send him draft notices and

started to call his house, saying that he had to conscript or it would be the last he would see of this world.

Mr. Bracic also recounted an incident where he and a friend were on a bus that was stopped by a group of people who checked identification documents. After seeing that several of the bus passengers were Muslim Albanian, they threatened and verbally abused them, saying this is the last time for Albanians to be in the area. Six months later, an incident occurred that caused Mr. Bracic to leave Montenegro. Around sunset, when he was on the street, five men dressed in black civilian clothes asked Mr. Bracic his name and attacked him. The men called him a traitor and beat and kicked him until he temporarily lost consciousness. When he arrived at his home, his mother called an ambulance, which transported him to the emergency room at a nearby hospital. He spent three days in the hospital recovering from injuries to his head and bruises all over his body. Mr. Bracic did not report the incident to the police because he was afraid.

In September 2001, a group of men dressed in police uniforms came to his home. Through the keyhole of the front door, he recognized that one of the men was part of the group that had assaulted him. He did not answer the door and escaped out the back window of his house. He never returned home. In November 2001, Mr. Bracic entered the United States by illegally crossing the Mexican border. Even after he had left Montenegro, the military police went to the homes of Mr. Bracic's two sisters to look for him. During one incident, the police searched the home of one of his sisters, hit her in the stomach with a rifle, and telephoned her later that night to say that "this was not the end of it."

Following his entry into the United States, removal proceedings were commenced against Mr. Bracic. He conceded removability but claimed asylum, withholding of removal, relief under Article 3 of the United Nations Convention

-3-

Against Torture and, in the alternative, voluntary departure on the grounds of past persecution and fear of persecution as a Muslim Albanian. The Immigration Judge who heard Mr. Bracic's case found him to be generally credible but denied his application on two grounds. First, the Immigration Judge held that Mr. Bracic failed to establish that he suffered past persecution on account of a protected ground. Second, the Immigration Judge held that Mr. Bracic had not shown a well-founded fear of future persecution upon his return to Montenegro. The Immigration Judge denied all of Mr. Bracic's applications for relief in a written decision and order. However, the Judge failed to enter an order of removal against the petitioner.

Mr. Bracic appealed only his applications for asylum and withholding of removal; the Board adopted and affirmed the Immigration Judge's decision. In its written decision, the Board noted that the "Immigration Judge's decision lacks an order of removal. Therefore, we find it appropriate to remand the record to the Immigration Court for entry of an order of removal." On March 6, 2008, the Immigration Judge held a telephonic hearing with Mr. Bracic, who was represented by counsel, and counsel for the government. During the hearing, the Immigration Judge asked, "[D]o the parties have anything further to present on this case at this time?" to which Mr. Bracic's counsel answered, "No, Your Honor." The Immigration Judge entered an order of removal against Mr. Bracic, and an appeal was timely filed. After the order of removal was issued, the Board issued its final decision on July 17, 2008, dismissing the appeal. The Board noted that neither party had anything further to present during the remanded hearing. Additionally, the Board commented that Mr. Bracic's "appellate brief . . . [was] not substantially different from the one filed on appeal, on March 12, 2007" and declined to remand the case "yet again, in the absence of new and material evidence relating to the respondent's potential eligibility for relief." Mr. Bracic timely filed his Petition for Review with this Court.

## II.

Mr. Bracic argues that his due process rights were violated because he had no meaningful opportunity to be heard when the Board remanded the case solely for entry of an order of removal but then dismissed the appeal because he did not submit new and material evidence or raise new issues before the Immigration Judge. We review Mr. Bracic's due process challenge *de novo*, as the question of whether an immigration hearing violates due process is a purely legal issue. Al Khouri v. Ashcroft, 362 F.3d 461, 463 (8th Cir. 2004).

As a preliminary matter, we observe that Mr. Bracic did not raise a due process claim in the administrative proceedings. Generally, as a condition to judicial review, a petitioner must have "exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252 (d)(1); Frango v. Gonzales, 437 F.3d 726, 728 (8th Cir. 2006) (stating that Congress likely intended exhaustion requirement to mean that an alien not only pursue all stages of administrative review but also raise all issues before the agency). Nonetheless, "we have subject-matter jurisdiction over aliens' unexhausted constitutional claims unless the claims concern procedural errors correctable by the administrative tribunal." Geach v. Chertoff, 444 F.3d 940, 945 (8th Cir. 2006). Mr. Bracic's due process claim does not concern "procedural errors correctable by the administrative tribunal" because the issue first arose after the Board issued its order of removal. See id. Thus, Mr. Bracic is not precluded from raising this claim.

To establish a due process violation, Mr. Bracic must "demonstrate both a fundamental procedural error and that the error resulted in prejudice." Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003). Prejudice requires "a showing that the outcome of the proceeding may well have been different had there not been any procedural irregularities." Tun v. Gonzales, 485 F.3d 1014, 1026 (8th Cir. 2007)

(holding that alien's due process rights were violated by exclusion of expert's report and testimony, exclusion of a second expert's corroborating report, and unreliable translations); Al Khouri, 362 F.3d at 467 (holding that alien's due process rights were violated by limiting alien's testimony and then concluding that limited responses undermined his credibility, and by allowing inadequate time to prepare his testimony). This standard does not require petitioners to show by a preponderance that, but for the procedural infirmities, the result of the proceedings would have been different. Tun, 485 F.3d at 1026. Rather, petitioners must demonstrate an error that "potentially . . . affects the outcome." Id. (quotation omitted).

The government raises the argument that the Immigration Judge asked Mr. Bracic during his remanded hearing if Mr. Bracic had anything further to present, to which counsel responded in the negative. Although the Immigration Judge asked that question, the Immigration Judge and the parties clearly viewed the remand as only ministerial. As the Immigration Judge stated in his oral ruling, "this matter has been remanded strictly for the purpose of the court entering an Order of Removal." On appeal from that order, the Board reiterated the procedural posture of the case, stating that the case had been remanded "solely for an order of removal." Despite the limited remand, the Board then cited lack of additional evidence at the remanded hearing as a reason for its decision to dismiss Mr. Bracic's appeal.

Mr. Bracic encountered a situation he could not have anticipated or controlled. He was granted a hearing for the express purpose of receiving an order of removal. The hearing was held by telephone only. It is clear from the record and logical to conclude that the Immigration Judge intended nothing other than entering the order. The Board received the case again and this time denied Mr. Bracic's appeal, at least in part because he failed to offer new evidence at the hearing. This scenario constitutes procedural error. See In re Patel, 16 I. & N. Dec. 600, 600 (BIA 1978) (holding a remand from the Board to the Immigration Judge is effective for all matters

deemed appropriate in the exercise of administrative discretion "unless the Board qualifies or limits [the remand] for a specific purpose."); see also Al Khouri, 362 F.3d at 465 ("curtailing [petitioner's] testimony and circumscribing his ability to elaborate on the details of his claim by instructing him only to answer the questions asked and then concluding that [petitioner's] limited responses undermined his credibility violates notions of fundamental fairness").

We must next determine whether this procedural error resulted in prejudice. Lopez, 332 F.3d at 512. Here, Mr. Bracic argues that the procedural error had the potential for affecting the outcome of the proceedings. Aside from restating the standard, however, Mr. Bracic has failed to substantiate this claim. He has not shown how the procedural error would have changed the outcome of his case because he has offered no new evidence or advanced new issues that would have established his entitlement to asylum or withholding of removal. Because he has not done so, Mr. Bracic has not shown prejudice. See Tun, 485 F.3d at 1026; Al Khouri, 362 F.3d at 467. Accordingly, he has not established a due process violation.

III.

Next, Mr. Bracic argues that the Board wrongfully upheld the Immigration Judge's determination that his experiences in the former Yugoslavia did not rise to the level of past persecution. Mr. Bracic asserts that he has suffered from past persecution because of his Albanian ethnicity, Muslim religion and/or political opinion linked to the Albanian Union. His assertion consists mainly of two arguments intended to collectively show that a reasonable adjudicator would be compelled to find Mr. Bracic suffered past persecution: (1) he was persecuted by the government for having evaded unjust military conscription on account of his political opinion and/or membership in a particular social group; and (2) he was threatened and attacked because of his Albanian ethnicity, Muslim religion, and/or political opinion. The Immigration Judge,

however, determined that Mr. Bracic's harassment, physical abuse, and forced conscription did not constitute persecution. The Board noted its agreement with this conclusion but offered no additional analysis.

We review a denial of asylum for abuse of discretion and apply the deferential substantial evidence standard in evaluating the Board's factual findings. Karim v. Holder, 596 F.3d 893, 897 (8th Cir. 2010). We will not overturn the agency's decision unless Mr. Bracic demonstrates that the evidence "not only supports a contrary conclusion but *compels* it," Diallo v. Mukasey, 508 F.3d 451, 454 (8th Cir. 2007) (quotation omitted) (emphasis in original).

To establish eligibility for asylum, an applicant must show that he or she is a refugee who has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or has a well-founded fear of persecution on one of these grounds. 8 U.S.C. § 1101 (a)(42)(A); Karim, 596 F.3d at 896. "Past persecution is relevant either because it provides a basis for a well-founded fear of future persecution, or, in extreme cases, because the severity of past treatment may form part of a compelling reason for the alien's unwillingness to return to the site of such persecution." See Fisher v. I.N.S., 291 F.3d 491, 497 (8th Cir. 2002); 8 C.F.R. § 208.13(b)(1).

If Mr. Bracic establishes past persecution, he is entitled to a presumption of a well-founded fear of persecution on the basis of his original claim upon his return to Montenegro. See 8 C.F.R. § 1208.13(b)(1). The burden then shifts to the government to rebut the presumption. The government must show, by a preponderance, fundamentally changed country conditions or the possibility of internal relocation. Id.

A well-founded fear of persecution must be both subjectively genuine and objectively reasonable. Ngengwe v. Mukasey, 543 F.3d 1029, 1032-33 (8th Cir. 2008). Persecution may be a harm to be inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control. Id. at 1033 (citations and quotations omitted). It "is an extreme concept that excludes low-level intimidation and harassment." Sholla v. Gonzales, 492 F.3d 946, 951 (8th Cir. 2007) (citations and internal quotation marks omitted). Persecution includes the "threat of death, the threat of infliction of torture, and the threat or infliction of injury to one's person or one's liberty on account of a protected ground." Id. (citations and internal quotation marks omitted). "In some cases, an applicant may be able to show a well-founded fear of persecution on cumulative grounds." Ngengwe, 543 F.3d at 1036 (8th Cir. 2008) (citations and internal quotation marks omitted). An applicant "is not obliged to show conclusively why persecution has occurred or may occur. However, there must be some showing that past persecution was on account of one of the five protected grounds." Hassan v. Ashcroft, 388 F.3d 661, 666 (8th Cir. 2004) (citations and internal quotation marks omitted).

To obtain withholding of removal, an alien must demonstrate a clear probability that he would suffer persecution on account of a protected ground. Karim, 596 F.3d at 897. The standard for withholding of removal is more rigorous than that for asylum, so an alien who fails to prove eligibility for asylum cannot meet the burden for withholding of removal. Id. Withholding of removal is a mandatory form of relief, whereas asylum is discretionary. 8 U.S.C. §§ 1231 (b)(3)(A), 1158 (b)(1).

Mr. Bracic argues that the Immigration Judge erred in concluding that he did not suffer persecution in part for his refusal to join the Serb-dominated national army, both during and after the Kosovo war. The background documents show that the Serbian military was committing atrocities against ethnic Albanians in Kosovo as part of the government's campaign of ethnic cleansing, which primarily occurred between

March and late June of 1999. They also suggest that minorities were to play the role of human shields during the war. While other courts have recognized this as a basis for asylum status, see, e.g., Islami v. Gonzales, 412 F.3d 391, 396-97 (2d Cir. 2005) (stating that alien's fear of retribution for refusing to participate in Kosovo's military known to perpetrate crimes against humanity constitutes past persecution), we need not decide whether Mr. Bracic established past persecution in part for his refusal to join the national army. The government's evidence concerning changed country conditions in Montenegro successfully rebuts the presumption of future persecution on this basis because the record establishes that the war in Kosovo has ended, the government has changed, and a law has been passed to allow for conscientious objection. See also Islami, 412 F.3d at 398 (holding that presumption of future persecution of an Albanian who fled the former Yugoslavia to avoid draft was rebutted by evidence that Serb-domination of Kosovo was ended); Gashi v. INS, 224 F. App'x 74, 75 (2d Cir. 2007) (same); Grdoc v. Gonzales, 202 F. App'x 508, 511 (2d Cir. 2006) (same).

Mr. Bracic's claim that he suffered persecution, however, does not rest solely on his forced conscription argument. Mr. Bracic also asserts that evidence that he was threatened and attacked supports his claim of past persecution. The Board cites the Immigration Judge's decision, which addressed "only one incident of alleged physical mistreatment." As the Immigration Judge noted, citing Fisher, 291 F.3d at 497-98, "one episode of physical mistreatment does not necessarily require the Court to find that the respondent suffered past persecution." To be sure, we have stated that "[e]ven minor beatings or limited detentions do not usually rise to the level of past persecution." Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006) (alien did not suffer physical injury from being slapped twice by his brother-in-law who had no ties to government). Nonetheless, "[w]e have never held that a specific, credible, and immediate threat of death on account of a political opinion is outside the definition of

-10-

'persecution,' just because it occurs during a single incident." <u>Corado v. Ashcroft</u>, 384 F.3d 945, 947 (8th Cir. 2004).

Looking at the record as a whole, we conclude that the facts compel a conclusion other than that reached by the Immigration Judge. We are mindful of the stringent nature of the substantial evidence standard, but no reasonable fact-finder could fail to find that Mr. Bracic suffered past persecution. The facts surrounding the incident are much more than "mistreatment." <u>See</u> <u>Fisher</u>, 291 F.3d at 494 (petitioner's physical mistreatment of being pushed while passing by a demonstration did not amount to persecution). Mr. Bracic testified that five men dressed in black asked him for his name, called him a traitor, and beat and kicked him until he temporarily lost consciousness. He then spent days in the hospital. Later, after he recognized one of his assailants outside of his front door dressed in a police uniform, he fled and never returned home. He did not report the incident to the police because he feared being caught.

This beating was not the only evidence in the record of past persecution. Mr. Bracic testified to an incident in February 2001 where he and a friend were on a bus that was stopped by a group of people who checked identification documents. After seeing that several of the bus passengers were Muslim Albanian, they threatened and verbally abused them, saying this is the last time for Albanians to be in the area. The police also searched the homes of both of Mr. Bracic's sisters while looking for him after he had fled. The officers hit one sister in the stomach with a rifle and telephoned her later that night to say that "this was not the end of it." Mr. Bracic included other claims of physical harm in his application for asylum and attached affidavit, which were admitted into the record. His affidavit includes testimony of police mistreatment and beatings from soldiers, police, and their spy groups and sects who had the authority to execute Muslims. In short, Mr. Bracic's persecutors made numerous and

-11-

credible threats, accentuated by harassment and beatings, as well as by fear of retribution for refusing to participate in forced conscription.

The nature and frequency of the attacks against Mr. Bracic and his family fueled the urgency of his leaving. The mistreatment that the petitioner claims to have suffered, when considered on a cumulative basis, compels the conclusion that he suffered past persecution. See Diallo, 508 F.3d at 454.

As mentioned above, because Mr. Bracic has established past persecution, he is also entitled to a presumption of a well-founded fear of persecution on the basis of his original claim upon his return to Montenegro. See 8 C.F.R. § 1208.13(b)(1). The burden then shifts to the government to rebut the presumption by showing fundamentally changed country conditions or the possibility of internal relocation. Id. The government has a preponderance of the evidence burden of proof. Id.

In this case, the government has not satisfied its burden. Muslims and ethnic Albanians remain a minority in Montenegro. The country reports presented by the government do not show a fundamental change. The background documents state that "[s]ome ethnic discrimination persisted" and "[v]iolence and discrimination against . . . ethnic minorities were problems." U.S. Dep't of State, Serbia and Montenegro: Country Reports on Human Rights Practices - 2004 (Feb. 28, 2005). In addition, the "[p]olice at times beat detainees and harassed citizens." Id. This is not to say that more recent evidence could not demonstrate changed conditions in Montenegro, but we are determining this case on the record before us. The country reports the government presented are not enough to satisfy its burden to show a fundamental change. The record does not establish that, since the time he left the country, conditions in Montenegro have changed to such an extent that the petitioner no longer has a well-founded fear of being persecuted in that country.

We hold that the evidence would compel any reasonable fact-finder to conclude that Mr. Bracic suffered past persecution. We further believe that the government has failed to show by a preponderance of the evidence that conditions in Montenegro have changed to such an extent that a reasonable person in the petitioner's position would no longer have a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1). Accordingly, the petitioner is entitled to the regulatory presumption of a well-founded fear of persecution in Montenegro. Having concluded that Mr. Bracic is eligible for asylum, we remand this matter to the Immigration Judge for a specific determination of whether he would be granted discretionary relief. In addition, on remand the Immigration Judge should consider whether Mr. Bracic is entitled to withholding of removal based on all the evidence in the record.

## IV.

For the foregoing reasons, we grant the petition for review. We reverse the decision of the Immigration Judge that Mr. Bracic failed to establish eligibility for asylum on the basis of past persecution. We remand the matter to the Immigration Judge for a determination of whether Mr. Bracic is entitled to a discretionary grant of asylum and/or withholding of removal in light of all the evidence on the record.

_____