*Ullah v. Barr*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of October, two thousand twenty.

PRESENT:
> REENA RAGGI,
> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> > *Circuit Judges.*

_____

ANOWAR ULLAH,
> *Petitioner*,

v.                                                                              No. 18-2891

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent*.

_____

**FOR PETITIONER:**                    Khagendra Gharti-Chhetry, Chhetry &
                                                    Associates, P.C., New York, NY.

**FOR RESPONDENT:** Joseph H. Hunt, Assistant Attorney General; Carl McIntyre, Assistant Director; Nancy Ellen Friedman, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Anowar Ullah, a native and citizen of Bangladesh, seeks review of a September 5, 2018 decision of the BIA affirming a September 6, 2017 decision of an Immigration Judge ("IJ") denying Petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Anowar Ullah*, No. A 201 291 844 (B.I.A. Sept. 5, 2018), *aff'g* No. A 201 291 844 (Immig. Ct. N.Y.C. Sept. 6, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). "We review [the agency's] factual findings under the deferential substantial evidence standard, treating them as conclusive unless any reasonable

adjudicator would be compelled to conclude to the contrary." *Lecaj v. Holder*, 616 F.3d 111, 114 (2d Cir. 2010) (internal quotation marks omitted). "Legal questions, including mixed questions of law and fact and the application of law to fact, are reviewed *de novo*." *Id.* (internal quotation marks omitted).

Where, as here, a petitioner establishes past persecution, there is a presumption of a well-founded fear of future persecution as well as a presumption "that internal relocation would not be reasonable." 8 C.F.R. § 1208.13(b)(1), (3)(ii). These presumptions may be rebutted if the government proves, by a preponderance of the evidence, that internal relocation is, in fact, reasonable. *Id.* § 1208.13(b)(1)(i)(B), (ii). This is a two-step inquiry that requires the agency to consider (1) whether there is a safe area within the applicant's country of origin where the applicant could relocate to avoid future persecution and, if so, (2) whether "it would be reasonable to expect the applicant to do so." *Id.*; *see also Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 32–33 (B.I.A. 2012).

In this case, the agency concluded that the government had met its burden and demonstrated that Petitioner could avoid future persecution by relocating from his village to Bangladesh's capital city, Dhaka. Petitioner disagrees with

3

that conclusion, arguing that the agency's decision was based on outdated information and ignores present circumstances in Bangladesh.

Petitioner had previously relocated to Dhaka between 1998 and 2001, after he was attacked by Awami League members in his village because of his affiliation with the Bangladesh Nationalist Party ("BNP"). During his time in Dhaka, Petitioner was able to safely continue his activities for the BNP and work at his brother-in-law's garage. As a result, the agency determined that Petitioner could relocate to Dhaka again in the future:

> The fact that [Petitioner] was able to live, work, and maintain his party activities for a long period of time [in Dhaka] . . . while the Awami League was in power in his country and while members of the Awami League were looking for him . . . leads the Court to conclude that . . . it is reasonable . . . to expect [Petitioner to] relocate there in the future.

Certified Admin. Record ("CAR") at 71–72.

In the face of this evidence, Petitioner argues that whether he was able to successfully evade the Awami League 20 years ago says very little about whether he could do the same today. Rather than point to specific facts to demonstrate why he can no longer safely relocate to Dhaka, Petitioner instead identifies general changes in Bangladesh's circumstances since 2001 that he argues undermine the agency's conclusion. In particular, he points to the Awami League's return to

4

power in 2008 and the general tension and violence between the Awami League and BNP members since then. Because he has put forward no arguments specific to his ability to return to Dhaka, Petitioner's position essentially reduces to the general proposition that he would have a legitimate fear of persecution throughout the entire country. We cannot agree.

To start, the agency noted that Petitioner again was able to safely avoid persecution between 2008 and 2011 while the Awami League was in power. Though the agency was unable to pinpoint each of the locations where Petitioner stayed during that stretch, it noted that he did not report difficulties with work and continued his activities on behalf of the BNP. *See* CAR at 72. While we presume that this did not suffice to demonstrate a "specific area" to which the Petitioner could relocate, *M-Z-M-R-*, 26 I. & N. Dec. at 33–34, it does indicate that the Awami League's presence is not so pervasive as to render it impossible for Petitioner to avoid persecution should he return to Bangladesh. *See Mohammad v. Att'y Gen.*, 363 F. App'x 211, 213 (3d Cir. 2010) (finding it relevant that the petitioner was able to "live and travel around [Bangladesh] for months after [an] attack [by the Awami League], without a problem"). In other words, because Petitioner puts forward only general arguments about the Awami League's

5

control over the country, and because those assertions were undermined by Petitioner's ability to successfully avoid the Awami League for years, there is no indication that he could not safely relocate to Dhaka as he had done previously.

Next, the agency relied on the U.S. Department of State Country Report on Human Rights Practices for 2016, which concluded that "the government of Bangladesh [generally] does not restrict internal movement or relocation by its citizens in any significant way." CAR at 73. As other courts have noted, this fact supports a determination that Petitioner could safely relocate within the country. *See Hossain v. U.S. Att'y Gen.*, 704 F. App'x 895, 899 (11th Cir. 2017) (identifying freedom of movement throughout Bangladesh as suggesting that the petitioner could safely relocate).

Lastly, the agency concluded that "the government itself never persecuted [Petitioner] in the past." CAR at 73. He instead was persecuted by "workers of the Awami League." *Id.* Consequently, the agency reasoned that "there is no presumption of countrywide future persecution." *Id.*

When taken together, the agency's findings sufficiently support its ultimate conclusion that Petitioner can safely relocate to Dhaka to avoid future persecution. "To be sure, the record paints politics in Bangladesh as a messy and often violent

6

business," but "[t]his alone does not compel a conclusion contrary to that of the [agency]." *Karim v. Holder*, 596 F.3d 893, 899 (8th Cir. 2010).

Because Petitioner's withholding of removal and CAT claims rely on the same rejected factual predicate, they also fail. *See Kambolli v. Gonzales*, 449 F.3d 454, 457 n.3 (2d Cir. 2006); *Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is **DENIED**. All pending motions and applications are **DENIED** and stays **VACATED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court