# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2837

———————

Fozia Mohammed Hassen,               *
                                     *
            Petitioner,              *
                                     *    Petition for Review of an
      v.                             *    Order of the
                                     *    Board of Immigration Appeals.
Michael B. Mukasey, Attorney General, *
                                     *
            Respondent.              *

———————

Submitted: May 16, 2008
Filed: July 25, 2008

———————

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Fozia Mohommed Hassen's conditional status as a lawful resident was revoked and she was ordered removed to her home country, Ethiopia. She seeks review of an order of the Board of Immigration Appeals (BIA) that affirmed and adopted the decision of an Immigration Judge (IJ) that refused to adjust Hassen's status to permanent resident based on her marriage to a United States citizen. She also seeks review of that portion of the order which denied her petition for asylum, for withholding of removal, and for protection under the Convention Against Torture. We deny the petition for review.

In rejecting Hassen's claims, the IJ considered testimony from Hassen, Zuber Ali, and persons who believed that Hassen and Ali were married. The IJ considered a country report documenting Ethiopia's history of human rights abuses. The IJ further considered Hassen's visa application and the accompanying documentation, Hassen's application for asylum and related relief, and the records relied upon by the government in denying Hassen and Ali's joint request to adjust Hassen's status to permanent resident in 2001.

Our review is of the IJ's decision, which the BIA adopted in its entirety. Al Tawm v. Ashcroft, 363 F.3d 740, 743 (8th Cir. 2004). We review only the record as it existed before the IJ and the BIA. 8 U.S.C. § 1252(b)(4)(A). We are bound by the IJ's findings of fact unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see, e.g., Osonowo v. Mukasey, 521 F.3d 922, 927-28 (8th Cir. 2008). On appeal, the IJ's "discretionary judgment whether to grant [asylum is] conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

I. Marriage

A. Background

In 1998, Hassen married Ali, an American citizen, in Ethiopia. Six or seven months later, war broke out in Ethiopia and Ali left the country while Hassen moved to the capital city, Addis Ababa. In early 1999, Ali joined her in Addis Ababa to complete paperwork for her to join him in the United States. Ali departed for the United States in March of that year. In August 1999, Hassen joined him in Minneapolis, Minnesota, where they lived with various friends of Ali for more than a year. A few months after her arrival, Hassen obtained employment as a housekeeper at a casino, which she kept until the commencement of these proceedings. Ali left to attend graduate school on the East Coast, but Hassen did not know the name of the

school or the state in which it was located. Ali did not leave her his phone number, so they communicated only when he called her. Ali visited Hassen twice during the two years he was at school. Hassen sent money to Ali twice during that time, but did not visit him. Ali returned to Minnesota after completing school, but he moved to Wisconsin in February 2003 in search of better employment. Hassen stayed in Minnesota because her job, her friends, and the school she was attending were all located there. Hassen did not know the name of the town in Wisconsin where Ali was living and knew only that he was teaching children, a position that Ali obtained through a classmate from graduate school named Denise Buckbee. Although Ali and Buckbee both deny that they are romantically involved, Ali was staying at and paying rent on her home in Wisconsin. After one year in Wisconsin, Ali's teaching job expired. He testified that he unsuccessfully applied to several places in Minnesota before getting a job in Wisconsin. He remained in Wisconsin and did substitute teaching during the nine months it took to find permanent employment there. Hassen bought a house with a man named Ibrahim Kadir as an investment, but they both deny that they are romantically involved. She split the mortgage payment with Kadir until she was forced to stop working, but did not live there with him. Ali did not know Kadir or about Hassen's joint purchase of a house. Hassen and Ali have always maintained separate bank accounts and have never jointly owned any property, though he supported her when she was not working.

## B. Analysis

Hassen argues that the IJ erred by not adjusting her conditional resident status to permanent resident status based on her marriage to a United States citizen. A person who is granted conditional resident status because of a marriage to a United States citizen can have that status adjusted to permanent resident upon proper request. 8 U.S.C. § 1186a(c). Such an adjustment will be denied, however, if the marriage is found to have been entered into for the purpose of obtaining admission into the United

-3-

States.  8 U.S.C. § 1186a(b)(1)(A)(i).  The government bears the burden to prove by a preponderance of evidence that the marriage is a sham.  8 U.S.C. § 1186a(b)(2).

The facts relevant to this issue are largely undisputed.  Both in Ethiopia and in the United States, Hassen and Ali have lived apart more than they have lived together.  They have never shared any joint property, including bank accounts.  During at least some of their time apart, Hassen did not have Ali's phone number, and, as indicated earlier, she did not know the name of Ali's school, the state in which it was located, or the degree towards which he was working.  Hassen and Ali acknowledge that the marriage has been rocky since Ali moved to Wisconsin, but they argue that it was entered into in good faith.  Hassen contends that they are trying to establish themselves financially before establishing a home together and that in their culture, similar arrangements are not uncommon.  Although not beyond the realm of the possible, Hassen's explanations are not so strong that any reasonable fact-finder would be compelled to accept them.  Accordingly, the IJ's decision is supported by substantial evidence, and we will not overturn its finding that Hassen and Ali were not entirely credible and that the marriage was entered into for the purpose of obtaining admission to the United States.

## II.  Asylum and Withholding of Removal

Hassen argues that the IJ should have granted her requests for asylum and for withholding of removal.  Asylum may be granted to an applicant who is determined to be a refugee.  8 U.S.C. § 1158(b).  A refugee must have "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  An IJ must withhold an alien's removal to a country if "the alien's life or freedom would be threatened in that country because of" one of the same five grounds.  8 U.S.C. § 1231(b)(3)(A).  Also, under the Convention Against Torture, removal to a country must be withheld if the potential deportee proves that it is more likely than not that she will be tortured there.

8 C.F.R. § 208.16(c)(2). Although the standards for these three claims differ, we address them together because the facts relied upon to prove them are the same and Hassen does not prevail under any of them.

In the immigration visa application that Hassen completed in Ethiopia, she stated that she was employed as a cashier from 1994 to 1996, and was a babysitter from 1996 to 1999. She listed her only residence as Dire Dawa from 1978 to 1999. Hassen attached a certificate of good standing from Ethiopia stating that she had not been convicted of any crime or misdemeanor. She obtained a passport, her birth certificate, and permission to leave the country, and she was also able to register her marriage with the local authorities without difficulty. Her visa was approved, and she entered the United States in August 1999 as a permanent resident on a conditional basis. Hassen's resident status was terminated on September 3, 2004.

Hassen claims that, beginning in 1991, she was involved with the Oromo Liberation Front, primarily as a member of a singing and acting group, though she also carried a weapon and fought in a defensive action. When the war started in 1992, she was fourteen years old and went with the Oromo to the bush to hide from the government. Hassen claims that she was captured in 1995 and held for two years, during which time she was beaten and raped. After her release, government agents monitored her closely, causing her to confine herself largely to her house to avoid them.

The IJ stated that Hassen's allegations of imprisonment and physical and sexual abuse would, if credible, be reason enough to grant asylum. The IJ found, however, that her allegations were unsupported beyond her testimony and were undermined by her visa application and related documentation. Hassen testified that she was visited in prison by the Red Cross, but produced no evidence from the Red Cross to support that claim. She testified that her failure to provide any evidence from friends or family in support of her claim was the result of her lack of knowledge that such proof

would be necessary. Hassen testified that she was unable to read when she applied for the visa and that the persons who helped her wrote down that Hassen had been steadily employed from 1992 to 1999, instead of writing that she had been hiding in the bush and imprisoned for much of that time. She testified she was able to get a certificate of good standing from one regional government office because it did not check with the other regional government offices for her arrest records. Although Hassen adduced other facts and provided alternate explanations for the uncontested facts, we cannot say that any reasonable adjudicator would be compelled to accept her allegations and explanations as true. Accordingly, the IJ's decision to deny asylum was neither manifestly contrary to the law nor an abuse of discretion.

We reject without further discussion Hassen's contention that the government's failure to submit a brief to the BIA violated her due process rights.

The petition for review is denied.

———————————————