# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1338

_____

Mark Tettey Kom Degbe

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States; John F. Kelly,
Secretary of the Department of Homeland Security

*Respondent*s

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: February 13, 2018
Filed: August 13, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

SMITH, Chief Judge.

Mark Tettey Kom Degbe petitions for review of the Board of Immigration
Appeals' (BIA) denial of his request for asylum, withholding of removal, and

_____

[*]Chief Judge Smith and Judge Colloton file this opinion pursuant to 8th Cir.
Rule 47E.

application for relief under the Convention Against Torture (CAT) based on his claim that he faces danger in his home country of Ghana. We deny the petition.

## I. *Background*

Degbe came to the United States from Ghana in June 2002 on a B1/B2 non-immigrant visa. It authorized him to stay until late July 2002. However, he did not return to Ghana. The Department of Homeland Security (DHS) filed a Notice to Appear in 2007 charging Degbe with being removable pursuant to Immigration and Nationalization Act (INA) § 237(a)(1)(B). He did not appear, and in 2008, the immigration judge (IJ) entered a removal order *in absentia.* Degbe, nonetheless, remained in the United States.

Immigration and Customs Enforcement (ICE) detained Degbe after he was in a car accident in North Dakota in May 2014. In July 2014, he filed an emergency motion to reopen and rescind the 2008 removal order with the immigration court on the basis that the order was entered without proper notice, depriving him of the chance to resist his removal on the merits. Following the IJ's grant of the motion, Degbe filed an application for asylum, withholding of removal, and CAT relief.

Degbe's claim rested on his political activities while in Ghana. He supported the then-opposition party, the New Patriotic Party (NPP), in the 2000 elections. The NPP sought to take power from the ruling New Democratic Congress (NDC). Degbe alleged that he worked as a youth organizer for the NPP and canvassed for the NPP in a suburb of Accra, Ghana's capital. Degbe averred that he was attacked twice during the campaign. In one incident, a group of people threw stones at him. He was hit and suffered the loss of a tooth. Degbe claimed to have reported the stone-throwing incident to local police, who took no action, according to Degbe, as a result of pro-NDC sentiment in the police force. He also alleged that persons wearing NDC shirts stabbed him with a knife, leaving painful keloid scars. Degbe represented that Ghanaian doctors told him to come to the United States to have the

-2-

scars treated, though he did not actually receive treatment for the scars until 2007. Degbe contended he could not afford the treatment prior to 2007.

The NPP, Degbe's party, won the 2000 election. However, the NDC returned to power in 2008. It also won the subsequent 2012 election. Degbe claimed that he had heard reports of rampant political violence during the 2012 election season and began to fear that he would be killed or imprisoned if he returned to Ghana.

The IJ heard the case in late 2015 and issued her decision in April 2016, concluding that Degbe's claims were either procedurally defaulted or meritless. The IJ held that Degbe was ineligible for asylum due to the untimeliness of his request. Under INA § 208(a)(2)(B), an asylum application is generally due within one year of arrival in the country. However, changed circumstances, such as an alteration in country conditions that creates eligibility for asylum where it was previously absent, can extend that deadline. INA § 208(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)(i). The IJ held that the NDC's return to power in 2008 was such a change of circumstances. However, the IJ also concluded the NDC's 2012 re-election was not. Accordingly, the 2014 application for asylum was untimely.

The IJ also declined to withhold removal. She held that the knife attack sufficiently set forth past political persecution, creating a rebuttable presumption that Degbe had a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). However, she further held that the government had shown that the democratic process in Ghana had become smoother, less violent, and more stable since Degbe suffered the attack and left the country. Therefore, the government had demonstrated a fundamental change in circumstances that overcame the presumption of a well-founded fear of future persecution, extinguishing Degbe's claim for withholding of removal.

The IJ's withholding-of-removal analysis guided her CAT inquiry. The IJ relied on her finding that Ghana was not now unsafe for those, including Degbe, who

vocally disagreed with the ruling party. Accordingly, the IJ held that Degbe failed to "show[] that he would more likely than not be tortured by the government or someone acting with the acquiescence of the government if he were returned to Ghana." Pet'r's Add. at 17. The IJ denied Degbe's application for CAT relief. Though she dismissed all of Degbe's substantive claims, the IJ granted his request for voluntary departure.

Degbe appealed unsuccessfully to the BIA. In addition to the arguments made before the IJ, Degbe also included claims and supporting evidence regarding political violence in the summer of 2016 in the runup to that year's election. Degbe argued that the pre-election incidents constituted changed circumstances supporting a finding that his asylum application was timely. In addition, he asserted that these incidents qualified as extraordinary circumstances that demonstrated a well-founded fear of future persecution. He sought either a favorable ruling or a remand to the IJ for her to consider the new evidence.

The BIA did not expressly address the 2016 election claims in its January 2017 order. However, it agreed with the IJ that the asylum application was untimely. The BIA's analysis of Degbe's withholding-of-removal and CAT-protection requests echoed the IJ's:

> We agree with the Immigration Judge that the evidence of record demonstrates a change in country conditions such that the respondent no longer has a clear probability of persecution in Ghana. Past persecution gives rise to a rebuttable presumption that his life or freedom would be threatened in the future in the country of removal, on the basis of his original claim. *See* 8 C.F.R. § 1208.16(b). To overcome this regulatory presumption, the Department of Homeland Security must demonstrate, by a preponderance of the evidence that either (1) the respondent could avoid future persecution by relocating to another part of the proposed country of removal, or (2) since the time the persecution occurred, conditions in the respondent's country have changed to an extent that

the respondent's life or freedom would not be threatened if he were to return to his country. *See* 8 C.F.R. §§ 1208.16(b)(l)(i)(A) and (B).

The Immigration Judge determined that the evidence of record demonstrates a fundamental change in circumstances such that the respondent would not be threatened in Ghana. Accordingly, we find that the respondent has failed to satisfy the burden of proof required for withholding of removal. *See* section 241(b)(3) of the Act; 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b). The respondent also has alleged eligibility for protection under the Torture Convention. However, he relies upon the same evidence as that submitted for his withholding of removal claim. Accordingly, we further find that he has not demonstrated that it is more likely than not that he would be tortured for any reason if removed to Ghana. *See* 8 C.F.R. § 1208.16(c).

Pet'r's Add. at 3. Additionally, the BIA revoked Degbe's voluntary departure due to his failure to post the required bond.

This timely petition for review followed. We have jurisdiction to review the final order of the BIA. *See* 8 U.S.C. § 1252(a); 28 U.S.C. § 41.

## II. *Discussion*

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Davila-Mejia v. Mukasey*, 531 F.3d 624, 627 (8th Cir. 2008) (citing *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005)). "We review the agency determination that an alien is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture using the deferential substantial evidence standard." *Osonowo v. Mukasey*, 521 F.3d 922, 927 (8th Cir. 2008) (citing *Guled v. Mukasey*, 515 F.3d 872, 879 (8th Cir. 2008)). "We review the BIA's legal determinations de novo, according substantial deference to the

BIA's interpretation of the statutes and regulations it administers." *Davila–Mejia*, 531 F.3d at 627 (citing *Hassan v. Gonzales*, 484 F.3d 513, 516 (8th Cir. 2007)).

Degbe argues that his asylum application should not have been found untimely and that the agency's findings on country conditions in Ghana were not supported by the evidence. We deny his petition for review as to both grounds.

A. *Timeliness of Asylum Application*

Degbe does not challenge the conclusion that the 2012 Ghanaian election was not a change in circumstances. However, relying on 8 C.F.R. §§ 208.4(a)(2)(i)(A) and 1208.4(a)(5), he avers that the BIA should have nonetheless found his asylum application timely. Degbe contends that these rules extended the deadline for his asylum application because events preceding the 2016 elections constitute changed or extraordinary circumstances. Degbe asks for either a favorable ruling from this court or a remand to the agency for it to consider the 2016 election evidence. Degbe also states that the severity of his injuries while in Ghana justified a humanitarian reprieve from the one-year rule for an asylum application.

Based on our review of the record, we conclude that we lack jurisdiction to determine the timeliness of Degbe's asylum application. Therefore, we deny the petition for review on this issue.

An alien may receive asylum if he can show that he is a refugee and faces persecution in his home country due to, as relevant here, his political opinions. 8 U.S.C. § 1158. However, a request for such status must normally be filed within one year of the alien's arrival in the United States. *Id.* § 1158(a)(2)(B). Nonetheless, "if the alien demonstrates . . . either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year period]," an application filed outside that window may be considered. *Id.* § 1158(a)(2)(D). An

agency determination as to the applicability of one of the § 1158(a)(2)(D) exceptions is not subject to appellate review:

> When an IJ has "determined that the untimeliness of [the applicant's] asylum application was not excused by exceptional circumstances or changed conditions within the meaning of 8 U.S.C. § 1158(a)(2)(D), we lack jurisdiction to review [the applicant's] asylum claim." *Mouawad v. Gonzales*, 485 F.3d 405, 411 (8th Cir. 2007); *see* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General [as to whether an exception to the one-year application requirement applies]."); *Jallow v. Gonzales*, 472 F.3d 569, 571 (8th Cir. 2007) (holding that because the IJ determined the claimant did not satisfy one of the statutory exceptions to cure an untimely asylum application, the court is precluded from reviewing that timeliness determination on appeal).

*Juarez Chilel v. Holder*, 779 F.3d 850, 854 (8th Cir. 2015) (alterations in original).

The record demonstrates that Degbe had been in the United States approximately 12 years before he filed his initial application for asylum. Therefore, his application for asylum may only be considered if changed circumstances or exceptional circumstances justify the delay. In its review, the agency determined that neither exception was present to make Degbe's claim for asylum timely. Consequently, we lack jurisdiction to review this determination.

Degbe attempts to evade this bar by alleging that the BIA improperly failed to consider his evidence regarding the 2016 election. He avers that the events prior to that election were so tumultuous that it created a new changed circumstance. Degbe did not formally file a motion to reopen or remand but attached new evidence to his BIA brief with an alternative prayer for relief. His filing asked the BIA to "remand to the Immigration Judge (IJ) to consider previously unavailable evidence that describes the political instability in advance of the 2016 Ghanaian elections." App.

-7-

at 7. We will consider Degbe's argument as an appeal of a denial of the motion to remand. *See Alva-Arellano v. Lynch*, 811 F.3d 1064, 1066 (8th Cir. 2016) (treating BIA's dismissal of appeal as refusal to reopen and remand where petitioner's submission to BIA included previously unsubmitted documents and BIA construed the filings as a motion to remand).

Motions to remand and reopen are disfavored, and we review them under a "highly deferential abuse-of-discretion standard." *Id.* (citations omitted). Such motions "must state new facts that are material to the outcome of the proceeding and were neither available nor discoverable at the prior hearing." *Fongwo v. Gonzales*, 430 F.3d 944, 947 (8th Cir. 2005) (citing 8 C.F.R. § 1003.23(b)(3)). "Even if the evidence was previously unavailable, the BIA will remand only if the evidence is 'of such a nature that the Board is satisfied that if proceedings before the [IJ] were reopened, with all the attendant delays, the new evidence would likely change the result in the case.'" *Berte v. Ashcroft*, 396 F.3d 993, 997 (8th Cir. 2005) (alteration in original) (quoting *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (1992)).

The articles that Degbe attached to his brief to the BIA were all published after the IJ decision and were therefore previously unavailable. *See* App. 35–59. However, this evidence would not likely have changed the result of this case. It is therefore immaterial. *See Xiu Ling Chen v. Holder*, 751 F.3d 876, 878 (8th Cir. 2014) (citations omitted). Four of the articles were commentaries predicting that the 2016 election could turn violent, and of these four, two were based on a report of the same election observer. The fifth article was a summary of recent political violence. These articles are of a similar character to articles from 2014 and 2015 that Degbe had already submitted to the IJ. *See, e.g.*, App. 519–525, 538–550. The IJ had this latter category of articles when she found, *inter alia*, that Ghana was marked by "a general movement towards peaceful political transitions"; that "[w]hile there are reports showing cases of excessive force used by the police, there is no nexus found between the reported individualized attacks and Ghana's ruling party"; and that the country

enjoys "relative political stability." Pet'r's Add. at 16. Degbe's new submissions are not so convincing so as to meaningfully undermine the agency's conclusions.

Finally, we briefly address Degbe's claim that even if his asylum application were untimely, the agency should have granted him humanitarian asylum. This argument fails, as Degbe did not raise this issue to the agency, foreclosing our consideration of it:

> The statute authorizing judicial review of removal orders expressly provides that a court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). We have repeatedly held that failure to exhaust administrative immigration remedies precludes merits review of the unexhausted issue.

*Escoto-Castillo v. Napolitano*, 658 F.3d 864, 866 (8th Cir. 2011) (ellipsis in original) (citations omitted). Accordingly, humanitarian asylum is not warranted.

We deny the petition for review as to Degbe's request for asylum.

## B. *Likelihood of Future Persecution or Torture*

Degbe claims that the BIA and IJ overstated political progress toward democratic rule in Ghana. He points to reports of violence, disenfranchisement, and corruption during the 2008 and 2012 elections. He also cites to sections from the State Department's 2016 country report on Ghana indicating problems with the rule of law. Degbe claims that this evidence requires the grant of withholding of removal or CAT relief. We disagree and conclude that he fails to satisfy either standard.

### 1. *Withholding of Removal*

"To qualify for withholding of removal, an applicant must show a clear probability of persecution." *Nadeem v. Holder*, 599 F.3d 869, 873 (8th Cir. 2010)

(citing *Aung Si Thu v. Holder*, 596 F.3d 994, 999 (8th Cir. 2010)). He may make such a showing "by establishing past persecution or the likelihood of future threats to his or her life or freedom based on race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (citing 8 C.F.R. § 1208.16(b)). Past persecution creates a presumption of a threat to the alien's life or freedom in the country to which he would be returned. 8 C.F.R. § 1208.16(b)(1)(i). The presumption, however, is rebuttable. *Id.* The government can rebut the presumption by showing by a preponderance of the evidence that there has been a fundamental change in circumstances. 8 C.F.R. § 1208.16(b)(1)(i)(A). Proof of a new political climate satisfies this requirement. *See, e.g*, *Mambwe*, 572 F.3d at 548. In dismissing Degbe's appeal, the BIA stated:

> The Immigration Judge noted that it has been 13 years (now 14) since the respondent was in Ghana and that Ghana has successfully organized six consecutive elections with little or no violence. According to the Center of Strategic & International Studies, Ghana's democratic norms are entrenched. The Immigration Judge found, given the relative political stability in Ghana, that the Ghanaian government is fundamentally changed from what it was in 2000. The Immigration Judge found that the evidence of record demonstrates a change in conditions in Ghana and that the respondent is not more likely than not to be persecuted because of his political opinion; 8 C.F.R. § 1208.16(b)(1)(i)(A).

Pet'r's Add. at 2 (citations to the record omitted).

Degbe now argues that "[a]ll literature presenting Ghana as having an exemplary democracy since 1992 is devoid of substance, and goes against the past persecution already established by the IJ vis a vis the year 2000. The conditions between . . . 2000 . . . and the present year . . . [are] of no substantial significance." Pet'r's Br. at 35 (emphasis omitted).

"We will not overturn the agency's decision unless [Degbe] demonstrates that the evidence 'not only supports a contrary conclusion,' but that it is so compelling 'that no reasonable fact finder could fail to find the requisite fear of persecution.'" *Karim v. Holder*, 596 F.3d 893, 897 (8th Cir. 2010) (first quoting *Diallo v. Mukasey*, 508 F.3d 451, 454 (8th Cir. 2007), then quoting *Cooke v. Mukasey*, 538 F.3d 899, 904 (8th Cir. 2008)). Degbe's arguments fall well short of compelling a conclusion contrary to that of the BIA or the IJ.

At the time of the BIA's decision, the conclusion that Ghanaian democracy is fundamentally better established than it was in 2000 was supported by six straight elections unsullied by serious violence. Even the 2016 report that Degbe alleges was erroneously ignored supports this finding. In addition to noting that the NPP, Degbe's party, won the presidency and legislature in 2016, the report states, "The campaigns were largely peaceful, although there were reports of isolated instances of violence. Presidential and parliamentary elections conducted on December 7 were peaceful, and domestic and international observers assessed them to be transparent, inclusive, and credible." U.S. Dep't of State, Bureau of Democracy, H. and Lab., Ghana 2016 Human Rights Report at 1, https://www.state.gov/documents/organization/265472.pdf.

Degbe's evidence would not compel *all* reasonable fact finders to conclude that his life or freedom would be endangered by a return to Ghana. Therefore, we deny his petition for review of the denial of withholding of removal.

### 2. *Convention Against Torture*

Having fallen short of the lesser showing necessary for withholding of removal, Degbe's petition for review also fails as to CAT relief.

Relief under the CAT requires the applicant to demonstrate "'that it is more likely than not that he or she would be tortured if returned to

the proposed country of removal.'" *Malonga v. Mukasey*, 546 F.3d 546, 555–56 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(c)(2)); *see Hassen v. Mukasey*, 534 F.3d 927, 930 (8th Cir. 2008) (citing 8 C.F.R. § 208.16(c)(2)). . . . This standard is more onerous than the standard for asylum and withholding of removal in that a likelihood of torture requires more than a well-founded fear of persecution . . . .

*Khrystotodorov v. Mukasey*, 551 F.3d 775, 781–82 (8th Cir. 2008).

We deny the petition for review as to the CAT.

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____