# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2342

_____

Jinfeng Tian

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 7, 2019
Filed: July 30, 2019

_____

Before ERICKSON, BOWMAN, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Chinese citizen Jinfeng Tian petitions for review of a final order issued by the Board of Immigration Appeals ("BIA"). The BIA dismissed Tian's appeal of an immigration judge's ("IJ's") order that denied her asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We grant the petition, vacate the order of removal, and remand for further proceedings.

# I. Background

Tian is a native of China and was thirty-three years old at the time of her removal proceeding. She came to the United States in 2011 and stated she did so because she was being persecuted for her Christian faith. She applied for asylum, withholding of removal, and relief under CAT.

While in China, Tian attended what is commonly referred to as a house church. She described her worship services as "family gatherings" where individuals would meet, sing gospel songs, and read Bible verses. The church leader would then teach, with a discussion following. The services were under the leadership of someone Tian referred to as "Priest Chen." Tian was baptized in a home setting in China and later at a church in the United States. During her hearing before the IJ, Tian described her baptism, her acceptance of Christ as her savior, and what the baptism symbolized.

Tian testified that before she fled China she was arrested by the Chinese police for participating in these "family gatherings." She described how the police slapped, hit, and repeatedly kicked her during an interrogation. After her release, Tian stated she was placed under surveillance, required to report to Chinese government authorities each week on Sunday (her day of worship), and not allowed to associate with other house church members. Tian also claimed the police threatened to jail her for life if she failed to report. Tian further asserted her parents are still being questioned by the Chinese police as to her whereabouts.

During Tian's appearance before the IJ, she was asked oddly focused questions about her Christian faith. The government asked Tian questions about what the Baptist denomination means, how the Baptist church was founded, and why the Baptist church was created, to which she responded she did not know. The government next asked Tian about the organization of the Bible, to which she responded "there are two part[s] in the Bible, the Old Testament and the New

-2-

Testament." Tian then gave brief descriptions about the Old and New Testaments and quoted her favorite passage from the New Testament book of Mark. The government also asked about her understanding of religious holidays, to which she gave complete answers.

The government also extensively questioned who baptized Tian in the United States. Tian stated that pastor Yang Qing Jian baptized her. The government countered that the certificate of baptism indicated the pastor was Jerry Jean, to which Tian replied once again that it was pastor Jian. The government then asked why another person was listed as baptizing her. She maintained that it was pastor Jian and that he was listed on the certificate. After she was able to see the certificate, Tian identified that the certificate stated Yang Qing Jian's name, as well as his English name, Jerry Jean.

The IJ questioned Tian about her passport and how she obtained her visitor's visa to enter the United States. Tian responded that she had her passport prior to her arrest by Chinese authorities, the police did not take it, and she traveled to Beijing to obtain the visa. The IJ asked if Tian lied to government officials about the reason for getting the visa, to which she responded yes.

The IJ then questioned Tian about whether there were churches in China that are authorized by the government and if they were Christian churches. Tian stated that there were authorized churches, but she did not know if any were Christian because she had never been to one.

The IJ next asked Tian if she went to a doctor after her beating by Chinese police. Tian testified that she saw someone she described as a family doctor. After questioning, Tian further explained that a local doctor came to her home and she did not go to the hospital. The IJ then proceeded to ask a string of questions about doctors in Beijing and whether she could have gotten care there. When the IJ asked

-3-

if the doctors she did see would have provided information related to her beating by the police and Tian did not respond, the IJ stated: "For the record the respondent is not answering." Tian then explained the family doctors are not like doctors in the hospital and they only came to her home, and the IJ responded by stating "for the record the respondent is non-responsive."

The IJ then questioned Tian about her understanding of English, to which Tian responded that she speaks simple English. The IJ proceeded to ask why Tian would sometimes start answering before the interpreter finished. Tian responded that they had been talking about the names, so when she saw the name she pointed to it. The IJ also asked why she hesitated and appeared to look like she was "caught in a lie" during some questions. In response, Tian stated that she was recalling the past event and was not hesitating. Throughout questioning by her attorney, the government's attorney, and the IJ, Tian often did not answer or needed repetition of the question. On at least fourteen occasions the interpreter had issues translating words and difficulty communicating with Tian.

During the hearing, a witness corroborated Tian's testimony. The office manager for Immanuel Chinese Baptist Church testified that Tian started coming to their church weekly in 2012, and was also occasionally in attendance at additional fellowship and prayer meetings. Like Tian, this witness also could not testify as to why the Baptist church was created. However, the witness testified that Tian was an authentic Christian. He also confirmed that Yang Qing Jian's English name was Jerry Jean, and that Jian was the individual who baptized Tian.

After the hearing, the IJ denied all forms of relief, finding Tian was not a credible witness. The IJ cited the time it took Tian to answer questions, her demeanor, and that she said she could not speak English but was heard stating "this is the pastor's English name or words to that effect." The IJ added that Tian was non-responsive, had lengthy pauses, and then asked for questions to be repeated. The IJ

also cited the fact Chinese police did not take her passport and that she had lied to immigration officials to obtain a visa to the United States. The IJ concluded the Eighth Circuit does not have a separate analysis for the CAT claim and that he was denying that claim based on credibility as well.

Tian then appealed the IJ's decision to the BIA. The BIA found no clear error in the IJ's adverse credibility determination. The BIA discussed Tian's alleged inability to explain why she referred to her house church leader in China as a priest. The BIA also discussed the alleged inconsistencies in Tian's testimony about the name on Tian's baptism certificate. The BIA did not acknowledge the difficulties in communication with the interpreter. Additionally, the BIA noted Tian was unable to explain why she did not know the denomination of her American church was Baptist. The BIA also stated the IJ properly noted Tian lied in order to obtain her visa to leave China. Finding no clear error, the BIA dismissed Tian's appeal of the IJ's denial of all claims.

Tian petitions this court for review.

## II. Analysis

Tian faces a high hurdle to overcome an adverse credibility determination by the IJ. Such determinations are afforded great deference. We review for substantial evidence, *Diallo v. Mukasey*, 508 F.3d 451, 454 (8th Cir. 2007), and it is a rare case where an adverse credibility determination is disturbed on appeal. This, however, is that rare case. *See Cojocari v. Sessions*, 863 F.3d 616, 617–18 (7th Cir. 2017). Under our standard of review, credibility findings must be "supported by specific, cogent reasons for disbelief." *Sivakaran v. Ashcroft*, 368 F.3d 1028, 1028 (8th Cir. 2004). "[I]t cannot rely on trivial details or easily explained discrepancies." *Tandia v. Gonzales*, 487 F.3d 1048, 1052 (7th Cir. 2007). We note that "cogent" means "clear, logical and convincing." *Cogent*, Lexico,

http://www.lexico.com/en/definition/cogent (formerly Oxford Dictionaries). The reasoning behind the IJ's credibility finding here is simply not cogent.

We have two primary concerns with the BIA's order and the IJ's decision, both of which we review. *Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006) ("When the BIA adopts the IJ's decision, but adds reasoning of its own, we review both decisions."). First, the IJ relied on personal beliefs and perceived common knowledge to reach unfounded adverse conclusions regarding Tian's faith. Second, the IJ gave no weight to translation issues in the proceeding.

## A.  Faith Questions

On the first issue, Tian's situation bears significant similarities to an IJ order reviewed by the Seventh Circuit. *See Jiang v. Gonzales*, 485 F.3d 992 (7th Cir. 2007). In that case, the IJ denied Jiang's application for relief. *Id.* at 993. The IJ discredited Jiang's testimony based, in part, on "his 'lack of knowledge' about Christianity." *Id.* at 994. The Seventh Circuit reversed, stating that "Jiang correctly argues that the IJ impermissibly relied on personal beliefs and his perceived common knowledge when concluding that Jiang 'has, at best, rudimentary if any knowledge about Christianity.'" *Id.* at 995. The court repeated its previous caution that IJs not "us[e] an applicant's 'ignorance of the details of religious doctrine . . . as evidence that an individual is not a true believer.'" *Id.* (ellipses in original) (quoting *Muhur v. Ashcroft*, 355 F.3d 958, 961 (7th Cir. 2004)). It also noted that the U.S. Department of State has previously recognized that some Chinese Christians lack access to the training and literature needed for extensive doctrinal knowledge. *Id.*

Like the Seventh Circuit, we believe credibility determinations are not properly based on nit-picking of translated answers regarding obscure religious trivia. Rather, credibility determinations in this circuit must be supported by substantial evidence providing "cogent reasons for disbelief." *Sivakaran*, 368 F.3d at 1028. In the context

-6-

of religious persecution, interrogations designed to trip up new converts or those without formal theological training fail to "bear a legitimate nexus" to such determinations. *See Jiang*, 485 F.3d at 995 (quoting *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006)).

The record here is replete with examples of the exact conduct our sister circuit has repeatedly criticized. The IJ used misguided questions and demonstrated little understanding of Chinese culture.

Three examples from the record illustrate our concern. First, when the IJ asked Tian about her church in the United States, the IJ noted that "[s]he claimed that it was a Christian Church, but was unable to explain why her baptismal certificate indicated that it was a Baptist Church." We know of no authority requiring familiarity with American Christian denominations for a foreign applicant to be a committed Christian. Second, the IJ seemed obsessed with, and troubled by, Tian's reference to her house church meetings as "family gatherings." For example, when asked why she called it a family gathering, Tian explained that "I can feel the warmth, the warmness and peace, happiness and harmony," which is a plausible explanation for using a family-based moniker for a house church meeting. Third, the IJ and the BIA cited Tian's lacking answers to the government's detailed theological and historical questions about the Baptist denomination.[1] This case is easily distinguished from cases where we have affirmed the denial of asylum such as *Xiin Yang v. Holder*, 747 F.3d 993 (8th Cir. 2004), where the application for asylum was time-barred, there was a lack of evidence the applicant was even a Christian, and allegations of persecution pertained only to a third person rather than the applicant.

---

[1]We suspect few American Christians could answer some of the questions posed, such as, "[c]an you tell us the foundation or why the Baptist Church was created?"

Equally disturbing is the IJ's lack of cogent reasoning in assessing the challenges faced by religious minorities under repressive regimes. For example, the IJ questioned why Tian lacked medical documentation of beatings from Chinese police. "[M]ost telling," according to the IJ, was that Tian "admitted that she lied to immigration officials in order to obtain her visitor's visa." This explanation is consistent with behavior required to escape a country where officials had physically beaten her for her religious views. The IJ showed little awareness of authoritarian regimes or why one could feel compelled to use deception.[2] In a similar tone-deaf manner, the IJ also asked Tian repeatedly about government-approved churches. The IJ's implied personal belief that such churches were a reasonable alternative has no support in the record.

## B. Translation Issues

A cogent credibility determination must also have at least some awareness of the effects of translation. "[W]hen evaluating credibility, an IJ should be sensitive to misunderstandings caused by language barriers, the use of translators, and cultural differences." *Marouf v. Lynch*, 811 F.3d 174, 180–81 (6th Cir. 2016) (alteration in original) (quoting *Reyes-Cardona v. Holder*, 565 F. App'x 366, 367 (6th Cir. 2014)). "[U]nresponsive answers from a witness" may be "evidence of improper translation." *See Tun v. Gonzales*, 485 F.3d 1014, 1030 (8th Cir. 2007). Adding numerous instances of such translation errors can "len[d] an air of evasiveness and confusion to the proceedings" that clouds any assessment of credibility. *See id.* at 1031.

---

[2]The Chinese government is reportedly holding hundreds of thousands of religious minorities in detention camps. Tamar Beeri, *Muslim Chinese Woman Describes Torture in Detention Camp*, The Jerusalem Post (June 8, 2019), www.jpost.com/International/Muslim-Chinese-woman-describes-torture-in-detention-camp-591919. It is also reportedly engaging in forced organ harvesting from certain religious minorities. *See* Independent Tribunal Into Forced Organ Harvesting from Prisoners of Conscience in China, *Final Judgement & Summary Report* 1 (June 17, 2019), https://chinatribunal.com/final-judgement-report/.

The Fourth Circuit has expressed similar concerns about translation errors. It has observed that non-responsive and uncomfortable answers are understandable for someone who has experienced abuse by government authorities during previous questioning, especially when their primary language is not English. *See Ilunga v. Holder*, 777 F.3d 199, 212–13 (4th Cir. 2015). In *Ilunga*, "[t]he IJ specifically determined that Ilunga was initially non-responsive and then vague when asked about his prayer practices. Moreover, the IJ found he was 'hesitant and vague' when asked about the frequency and timing of his prayers." *Id.* at 210. The Fourth Circuit granted the petition for review despite the IJ's adverse credibility finding. *See id.* at 214. The court stated that "linguistic and cultural differences, combined with the effects of trauma, caution against normative determinations." *Id.* at 212. The Fourth Circuit noted that "there must be reasonable assurances that any inconsistencies in testimony are, in fact, real and not the product of interpretation errors, language-based confusion, or similar factors." *Id.* at 208.

We see no evidence that the IJ here accounted for translation issues in its assessment. For example, the IJ gave significant weight to Tian's difficulty in explaining why she used the word "priest" to describe her religious leader in China, even though Tian was a Mandarin speaker and the interpreter explained the term could be meant as "venerable." This problem was well beyond the "minor translation errors" and "isolated instances of translation errors" in cases where we have affirmed. *See, e.g.*, *Xin Yang*, 747 F.3d at 995. When faced with a translation issue and a translator affirmatively attempting to resolve the issue, the IJ chose to make its own arbitrary determinations without regard to the evidence and issues in front of it. This is a model of a decision that violates the cogency requirements by failing to account for translation issues.

### III. Conclusion

In sum, even under the deferential substantial evidence standard of review, the record does not support the IJ's determination. Credibility findings must be supported by cogent reasons for disbelief, and the BIA erred in upholding the IJ's finding. We grant Tian's petition for review, vacate the removal order, and remand the case for a new credibility determination consistent with this opinion.

ERICKSON, Circuit Judge, concurring in the judgment.

As stated in the majority opinion, our precedent requires a determination of credibility by an immigration judge (IJ) to be supported by "specific, cogent reasons." *Sivakaran v. Ashcroft*, 368 F.3d 1028, 1028 (8th Cir. 2004). The term "specific" means that the determination is supported by detailed explanation in the record, so that the reviewing court can understand the reasoning, and the IJ has met that standard here. *See Singh v. Gonzalez*, 495 F.3d 553, 557 (8th Cir. 2007). However, the term "cogent" means "convincing enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion." *Id*. At 558.

The IJ enumerated six reasons underlying his finding that Ms. Tian is not credible. I agree with the majority that the IJ's reasons largely appear to be grounded in personal conjecture, trivial details, or easily explained discrepancies. Indeed, some of those reasons may lead a reasonable adjudicator to a contrary conclusion, for example: the IJ viewed Ms. Tian's dishonesty in her visa application as a basis for finding her to be not credible, but that fact could just as easily bolster her story that she was afraid for her life in China, and so she lied to flee the country. On balance, I view the IJ's decision as lacking the cogent reasons that would survive review, and I believe remand for a new credibility determination is appropriate.

_____